# Exhibit A

APR. 17. 2008  1:48PM                                                                 NO. 5018   P. 2

| Multistate | NOTE | FHA Case No.<br>374-4726924-703 |
|---|---|---|

April 21, 2008
[Date]

1 Dogwod Road East
Mastic Beach, NY  11951
[Property Address]

1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means M&T Bank

and its successors and assigns.

2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of Two Hundred Sixty Nine Thousand Sixty One And Zero/100

Dollars (U.S. $ 269,061.00            ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six percent (         6.000  %) per year until the full amount of principal has been paid.

3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. MANNER OF PAYMENT

   (A) Time

   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on June 01         , 2008         . Any principal and interest remaining on the first day of May 2038     , will be due on that date, which is called the "Maturity Date."

   (B) Place

   Payment shall be made at PO Box 62182, Baltimore, MD  21264                                     or at such place as Lender may designate in writing by notice to Borrower.

   (C) Amount

   Each monthly payment of principal and interest will be in the amount of U.S. $ 1,613.16           . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

   (D) Allonge to this Note for payment adjustments

   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

   ☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

12713459                                                                                       12713459

FHA Multistate Fixed Rate Note - 10/95
VMP -1R (0210).02
VMP Mortgage Solutions (800)521-7291
Page 1 of 2                                Initials: [signature]

### 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_/s/ Kevin McMahon_____ (Seal)        _____ (Seal)
Kevin McMahon                    -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                         -Borrower

12713459                                                                          12713459

-1R (0210).02                        Page 2 of 2





**SUFFOLK COUNTY CLERK**
**RECORDS OFFICE**
**RECORDING PAGE**

Type of Instrument: MORTGAGE
Number of Pages: 10
Receipt Number : 08-0056744
MORTGAGE NUMBER: CZ014846

Recorded: 06/13/2008
At: 11:50:17 AM

LIBER: M00021720
PAGE: 028

District: 0200
Section: 979.10
Block: 06.00
Lot: 051.000

EXAMINED AND CHARGED AS FOLLOWS

Mortgage Amount: $269,061.00

Received the Following Fees For Above Instrument

| Fee | Amount | Exempt | Fee | Amount | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $30.00 | NO | Handling | $5.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Affidavit | $0.00 | NO | Notation | $0.00 | NO |
| Cert.Copies | $0.00 | NO | RPT | $50.00 | NO |
| Mort.Basic | $1,345.50 | NO | Mort.Addl | $777.30 | NO |
| Mort.SplAddl | $0.00 | NO | Mort.SplAsst | $672.75 | NO |
|  |  |  | Fees Paid | $2,900.55 |  |

MORTGAGE NUMBER: CZ014846

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

Judith A. Pascale
County Clerk, Suffolk County

| | | |
|---|---|---|
| Number of pages  10 | | RECORDED<br>2008 Jun 13 11:50:17 AM<br>Judith A. Pascale<br>CLERK OF<br>SUFFOLK COUNTY<br>L M00021720<br>P 028<br>C2014846 |
| This document will be public record. Please remove all Social Security Numbers prior to recording. | | |
| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |

**3** FEES

| | | |
|---|---|---|
| Page / Filing Fee | | Mortgage Amt. 269,061<br>1. Basic Tax _____ |
| Handling 5.00 | | 2. Additional Tax _____ |
| TP-584 _____ | | Sub Total _____ |
| Notation _____ | | Spec./Assit. _____ |
| EA-5217 (County) _____ | Sub Total _____ | or<br>Spec./Add.<br>TOT. MTG. TAX  2795.55 |
| EA-5217 (State) _____ | | Dual Town ___ Dual County ___ |
| R.P.T.S.A. 65 | | Held for Appointment _____ |
| Comm. of Ed. 5.00 | | Transfer Tax _____ |
| Affidavit _____ | | Mansion Tax _____ |
| Certified Copy _____ | | The property covered by this mortgage is or will be improved by a one or two family dwelling only. |
| NYS Surcharge 15.00 | Sub Total _____ | YES ✓ or NO ___ |
| Other _____ | Grand Total 105 | If NO, see appropriate tax clause on page # ___ of this instrument. |

| 4 | Dist. 0200 97910 0600 051000<br>0200 97910 0600 052000 | 5 | Community Preservation Fund |
|---|---|---|---|
| Real Property<br>Tax Service<br>Agency<br>Verification | (PTS RCWH A 08-JUN-08) | | Consideration Amount $ _____<br>CPF Tax Due $ _____<br>Improved _____<br>Vacant Land _____ |

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address<br>RECORD & RETURN TO:<br><br>Madison Settlement Services LLC.<br>300 Frederick St. Ste. 5<br>Hanover, PA 17331 | TD _____<br>TD _____<br>TD _____ |
|---|---|---|

| Mail to: Judith A. Pascale, Suffolk County Clerk<br>310 Center Drive, Riverhead, NY 11901<br>www.suffolkcountyny.gov/clerk | 7 | Title Company Information<br>Co. Name _____<br>Title # _____ |
|---|---|---|

**8** **Suffolk County Recording & Endorsement Page**

This page forms part of the attached ____Mortgage____ made by:
(SPECIFY TYPE OF INSTRUMENT)

____Kevin Mc Mahon____

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO:
____MERS/ M+T Bank____

In the TOWN of ____Brookhaven____
In the VILLAGE
or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

Return To:

MH8633
Madison Settlement Services
300 Frederick Street Ste. 5
Hanover, PA 17331

Prepared By:
Angela Mast
2270 Erin Court
P.O. Box 7428
Lancaster, PA  17604

This property is or will be principally improved by a one - or two - family house or dwelling only.

———————————————— [Space Above This Line For Recording Data] ————————————————

State of New York

# MORTGAGE

FHA Case No.
374-4726924-703

MIN 100050300007146195

THIS MORTGAGE ("Security Instrument") is given on April 21, 2008
The Mortgagor is Kevin McMahon

whose address is 1 DOGWOOD ROAD East, Mastic Beach, NY 11951

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"). (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD. M&T Bank
, and
("Lender") is organized and existing under the laws of New York
has an address of 1 M&T Plaza, Buffalo, NY  14203
. Borrower owes Lender the principal sum of
Two Hundred Sixty Nine Thousand Sixty One And Zero/100
Dollars (U.S. $269,061.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on May 01, 2038
. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,

Section:           Block:              Lot:              Unit:
12713459                                                          12713459
FHA New York Mortgage with MERS - 4/96
Wolters Kluwer Financial Services
VMP®-4N(NY) (0404).01        Amended 2/01
Page 1 of 8

with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in Suffolk County, New York:

SEE PRELIMINARY TITLE

which has the address of 1 Dogwod Road East [Street]
Mastic Beach [City], New York 11951 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be

12713459                                                                                              12713459

VMP®-4R(NY) (9509).01                    Page 2 of 8

amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

12713459                                                                                                                 _KMcH_ 12713459

VMP®-4N(NY) (8804).01                                        Page 3 of 8

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.
   (a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
   (b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

12713459

VMP®-4N(NY) (0309).01    Page 4 of 8    Initials: [signature] 12713459

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12713459

VMP®-4N(NY) (0405).01

Page 5 of 8

12713459

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

12713459

VMP®-4N(NY) (0304)01

Page 5 of 8

_Initials: KMC_ 12713459

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may bring a lawsuit to take away all of the Borrower's remaining rights in the Property and have the Property sold. At this sale, Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount owed Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under paragraph 9.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but Borrower will pay all costs of recording the discharge in the proper official records.

20. **Agreements about New York Lien Law.** Borrower will receive all amounts lent by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (A) hold all amounts which Borrower received and which Borrower has a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this paragraph 20.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. (Check applicable box(es)).

☐ Condominium Rider        ☐ Growing Equity Rider        ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

12713459

VMP®-4N(NY) (9303).01

Page 7 of 8

KMO/12713459

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____    X _Kevin McMahon_____ (Seal)
                                      Kevin McMahon              -Borrower

_____    _____ (Seal)
                                                                  -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                         -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                         -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                         -Borrower

STATE OF NEW YORK County of Suffolk                    }ss.
  On the 21st         day of April, 2008    before me, the undersigned, a notary public in and for
said state, personally appeared Kevin McMahon

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.
My Commission Expires:                      Notary Public

Tax Map Information: 200-97910-6-51&52                VINCENT CAMPASANO
12713459                                               Notary Public, State of New York
VMP®-4N(NY)(asen)(a)                Page 5 of 5       Suffolk County, No. 4959127    12713459
                                                      Term Expires November 20, 2009







**SUFFOLK COUNTY CLERK**
**RECORDS OFFICE**
**RECORDING PAGE**

Type of Instrument: ASSIGNMENT OF MORTGAGE         Recorded:    11/13/2008
Number of Pages: 2                                  At:          01:32:31 PM
Receipt Number : 08-0108888

                                                    LIBER:       M00021767
                                                    PAGE:        130

District:         Section:         Block:           Lot:
0200              979.10           06.00            051.000

            EXAMINED AND CHARGED AS FOLLOWS
Received the Following Fees For Above Instrument
                            Exempt                                    Exempt
  Page/Filing    $10.00     NO       Handling        $20.00           NO
  COE             $5.00     NO       NYS SRCHG       $15.00           NO
  Notation        $0.50     NO       Cert.Copies      $0.00           NO
  RPT            $50.00     NO
                                     Fees Paid      $100.50

            THIS PAGE IS A PART OF THE INSTRUMENT
                  THIS IS NOT A BILL

                  Judith A. Pascale
                  County Clerk, Suffolk County

| 1 | 2 |
|---|---|

Number of pages  2

RECORDED
2008 Nov 13 01:32:31 PM
Judith A. Pascale
CLERK OF
SUFFOLK COUNTY
L M00021767
P 130

**This document will be public record. Please remove all Social Security Numbers prior to recording.**

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**3** FEES

Page / Filing Fee _____
Handling  20.00
TP-584 _____
Notation _____
EA-52 17 (County) _____   Sub Total _____
EA-5217 (State) _____
R.P.T.S.A.  50.00
Comm. of Ed.  5.00
Affidavit _____
Certified Copy _____
NYS Surcharge  15.00   Sub Total _____
Other _____   Grand Total  100.50

Mortgage Amt. _____
1. Basic Tax _____
2. Additional Tax _____
Sub Total _____
Spec./Assit.
   or
Spec. /Add. _____
TOT. MTG. TAX _____
Dual Town ____ Dual County ____
Held for Appointment _____
Transfer Tax _____
Mansion Tax _____

The property covered by this mortgage is or will be improved by a one or two family dwelling only.
   YES ____ or NO ____
If NO, see appropriate tax clause on page # ____ of this instrument.

**4**  Dist. 0200  Section 979.10  Block 06.00  Lot 051.000
052.000

Real Property Tax Service Agency Verification   11-13-08

**5** Community Preservation Fund
Consideration Amount $ _____
CPF Tax Due   $ _____
Improved _____
Vacant Land _____
TD _____
TD _____
TD _____

**6** Satisfactions/Discharges/Releases List Property Owners Mailing Address
**RECORD & RETURN TO:**

Pillar Processing, LLC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

**7** Title Company Information
Co. Name  Prime Title
Title #  PT # 50303

**8** **Suffolk County Recording & Endorsement Page**

This page forms part of the attached  Assignment of Mortgage  made by:
(SPECIFY TYPE OF INSTRUMENT)

MERS

TO

M+T Bank

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

In the TOWN of  Brookhaven
In the VILLAGE
or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

Loan # 0012713459

# ASSIGNMENT OF MORTGAGE

County of **SUFFOLK**, State of New York

Assignor: **Mortgage Electronic Registration Systems, Inc., as nominee for M&T Bank, 3300 SW 34th Avenue Suite 101, Ocala, FL 34474**

Assignee: **M&T Bank, 1100 Wehrle Drive, Williamsville, NY 14221**

Original Lender: **Mortgage Electronic Registration Systems, Inc., as nominee for M&T Bank**

Mortgage made by KEVIN MCMAHON, dated **the 21st day of April, 2008** in the amount of **Two hundred and sixty nine thousand and sixty one dollars ($269,061.00)** and interest, recorded on **the 13th day of June, 2008** in the Office of the Clerk of the County of **SUFFOLK at Liber 21720 of Mortgages at Page 28.**

This said mortgage has not been otherwise assigned.

Property Address: 1 DOGWOD ROAD EAST, MASTIC BEACH, NY 11951
SBL # 979.10-06.00-051.000, 979.10-06.00-052.000

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns unto the above named Assignee the said Mortgage, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.
*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.
*IN WITNESS WHEREOF*, the Assignor has caused these presents to be signed by its duly authorized officer this 5TH day of November, 2008.

IN PRESENCE OF

Patricia Sneck

Mortgage Electronic Registration Systems, Inc., as nominee for M&T Bank

BY: _____
Christopher M. Zeis
Assistant Vice President

State of NEW YORK
County of ERIE    ss:
On the 5th day of November in the year 2008 before me, the undersigned, a notary public in and for said state, personally appeared Christopher M. Zeis, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the _____. *(Insert city or political subdivision and state or other place acknowledgment taken--- if acknowledgment is taken outside of New York State)*

Katherine M Kraus
Notary Public

KATHERINE M. KRAUS
Notary Public, State of New York
No. 01KR6168154
Qualified in Erie County
Commission Expires June 11, 2011

Pillar Processing, LLC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

50303